[999 NE2d 516, 977 NYS2d 153]

ALFRED G. OSTERWEIL, Appellant, v GEORGE R. BARTLETT, III, Respondent.

Argued September 12, 2013; decided October 15, 2013

**POINTS OF COUNSEL**

*Greenbaum, Rowe, Smith & Davis LLP*, Woodbridge, New Jersey (*Daniel L. Schmutter* of counsel), and *Bancroft PLLC* (*Paul D. Clement*, of the District of Columbia bar, admitted pro hac vice, and *D. Zachary Hudson*, of the District of Columbia bar, admitted pro hac vice, of counsel) for appellant. I. A ban on home handgun possession by part-time state residents violates the Second Amendment. (*District of Columbia v Heller*, 554 US 570; *Kachalsky v County of Westchester*, 701 F3d 81; *United States v Decastro*, 682 F3d 160; *San Antonio Independent School Dist. v Rodriguez*, 411 US 1; *Perry Ed. Assn. v Perry Local Educators' Assn.*, 460 US 37; *Anonymous v City of Rochester*, 13 NY3d 35; *Hernandez v Robles*, 7 NY3d 338; *Eu v San Francisco County Democratic Central Comm.*, 489 US 214; *Ashcroft v American Civil Liberties Union*, 542 US 656; *United States v Playboy Entertainment Group, Inc.*, 529 US 803.) II. A ban on home handgun possession by part-time state residents violates the Equal Protection Clause. (*Plyler v Doe*, 457 US 202; *Cleburne v Cleburne Living Center, Inc.*, 473 US 432; *Harper v Virginia Bd. of Elections*, 383 US 663.) III. This Court should construe New York law governing home handgun possession as not requiring domicile. (*Longwood Cent. School Dist. v Springs Union Free School Dist.*, 1 NY3d 385; *Matter of Contento v Kohinke*, 42 AD2d 1025; *Alliance of Am. Insurers v Chu*, 77 NY2d 573.)

*Eric T. Schneiderman, Attorney General*, New York City (*Claude S. Platton, Simon Heller, Barbara D. Underwood* and *Richard Dearing* of counsel), for respondent. The residency language of the handgun licensing statute should not be construed to impose a domicile requirement. (*Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20; *Rawstorne v Maguire*, 265 NY 204; *Matter of Hosley v Curry*, 85 NY2d 447; *People*

*ex rel. Simpson v Wells*, 181 NY 252; *Overstock.com, Inc. v New York State Dept. of Taxation & Fin.*, 20 NY3d 586; *People v Finkelstein*, 9 NY2d 342; *Lyng v Northwest Indian Cemetery Protective Assn.*, 485 US 439; *Ashwander v TVA*, 297 US 288; *People v Felix*, 58 NY2d 156, 464 US 802; *Rooney v Tyson*, 91 NY2d 685.)

**OPINION OF THE COURT**

PIGOTT, J.

The United States Court of Appeals for the Second Circuit, by certified question, asks us to decide whether an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere is eligible for a New York handgun license in the city or county where his part-time residence is located. We answer the certified question in the affirmative, on the basis of the relevant statute. As we explain below, it is therefore unnecessary for us to decide the constitutional issues raised by appellant.

## I.

Appellant Alfred G. Osterweil, a resident of Summit, New York, a town in Schoharie County, applied on May 21, 2008 for a New York State pistol/revolver license pursuant to Penal Law § 400.00. The Schoharie County Sheriff initiated the required background investigations (*see* Penal Law § 400.00 [4]). On June 25, in the course of correspondence on an unrelated matter, Osterweil informed the Sheriff that he had bought a home in Louisiana and that he intended to "make that state my primary residence," while keeping "a vacation property here in Schoharie County." Osterweil asked whether he would still be eligible for a handgun license.

Osterweil's letter raised an important question. Penal Law § 400.00 (3) (a) provides that

> "[a]pplications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver, to the licensing officer in the city or county, as the case may be, where the applicant *resides*, is principally employed or has his principal place of business as merchant or storekeeper" (emphasis added).

At the heart of Osterweil's query is the distinction between residence and domicile. Generally, establishing residence "turns on whether [one] has a significant connection with some locality

in the State as the result of living there for some length of time during the course of a year" (*Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20, 30 [1984]), whereas "[e]stablishment of a domicile in a [place] generally requires a physical presence in the [place] and an intention to make the [place] a permanent home" (*id.* at 28), i.e., intent to remain there for the foreseeable future. It follows that an individual can have more than one residence, but only one domicile (*see id.*). Osterweil maintained a residence in Schoharie County, but could no longer claim it as his domicile. Therefore, if a New York domicile is required for a handgun license, the statute makes him ineligible.

The Sheriff forwarded Osterweil's application and query to respondent George R. Bartlett, III, Schoharie County Court Judge and also the county's licensing officer. Osterweil submitted an affidavit to Judge Bartlett, stating that he and his wife continued to play a role in "social, political and community affairs" in Summit, even though they no longer made their primary residence there. He also cited the United States Supreme Court's recent decision in *District of Columbia v Heller* (554 US 570 [2008]), in which the Supreme Court struck down a District of Columbia law banning the possession of handguns in the home, holding that "the absolute prohibition of handguns held and used for self-defense in the home" is unconstitutional under the Second Amendment (*id.* at 636; *see also McDonald v Chicago*, 561 US —, 130 S Ct 3020 [2010]).

In May 2009, Judge Bartlett denied Osterweil's application for a handgun license, relying on Penal Law § 400.00 (3) (a) and an Appellate Division decision, *Matter of Mahoney v Lewis* (199 AD2d 734 [3d Dept 1993]), which held that "as used in this statute the term residence is equivalent to domicile" (*id.* at 735). Judge Bartlett further ruled that such a domicile requirement was constitutional, under *Heller*, as a lawful regulatory measure.

## II.

In July 2009, Osterweil commenced this action pursuant to 42 USC § 1983 in the United States District Court for the Northern District of New York, alleging that Judge Bartlett had violated his Second Amendment right to keep and bear arms and his Fourteenth Amendment right to equal protection, by denying his license application on the ground of his domicile.

He sought an injunction ordering the State to grant his application. Judge Bartlett, represented by the Attorney General's office, and Osterweil each moved for summary judgment.

On May 20, 2011, the District Court granted Judge Bartlett summary judgment, rejecting Osterweil's Second Amendment and Fourteenth Amendment claims (*see Osterweil v Bartlett*, 819 F Supp 2d 72, 85-87 [ND NY 2011]). On appeal, before the United States Court of Appeals for the Second Circuit, Osterweil reiterated his position that a domicile requirement for handgun possession is unconstitutional. The Attorney General now argued that Penal Law § 400.00 (3) (a) does not in fact contain a domicile requirement, obviating the need to reach the constitutional issues. On January 29, 2013, the Second Circuit, in an opinion by retired United States Supreme Court Justice Sandra Day O'Connor, certified the following question to us:

> "Is an applicant who owns a part-time residence in New York but makes his permanent domicile elsewhere eligible for a New York handgun license in the city or county where his part-time residence is located?" (*Osterweil v Bartlett*, 706 F3d 139, 145 [2d Cir 2013].)

We accepted the certified question, pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR) (20 NY3d 1058 [2013]), and now answer it in the affirmative.

### III.

In this unusual case, both appellant and respondent would have us answer the certified question in the affirmative. However, respondent asks us to answer the question purely on the basis of the statute, whereas appellant urges us to rule that the law cannot require domicile for handgun license eligibility because that would be unconstitutional.

We take a straightforward approach to this dispute. If Penal Law § 400.00 (3) (a) does not require domicile, then there is no need to decide the constitutionality of a hypothetical statute that requires domicile. The question concerning the meaning of the statute at issue—the question certified to us—must be answered prior to any question concerning its constitutional validity. This is not a case in which we are faced with an ambiguous statute requiring us to favor an interpretation that renders it constitutional over constructions that would invalidate it.

### IV.

Penal Law § 400.00 (3) (a) states that applications for a license to carry a pistol or revolver "shall be made and renewed . . . to

the licensing officer in the city or county, as the case may be, where the applicant resides, is principally employed or has his principal place of business as merchant or storekeeper." The applicant's residence is referred to in the context of delineating the procedure whereby an individual files an application for a license. The applicant is instructed to apply to the licensing officer in the city or county where he resides (or is principally employed, etc.). The plain language of the statute is not consistent with the theory that the law requires an applicant to establish domicile as an eligibility requirement. Were it so, we would expect to see the manner of proof of domicile set out in the statute.

Moreover, the legislative history of the statutes that underlay Penal Law § 400.00 evinces an intent to ensure that an applicant for a handgun license applies in his place of residence, rather than an intent to limit licenses to applicants who make their domicile in New York. The residency language was added to the Penal Law by chapter 792 of the Laws of 1931. Former Penal Law § 1897 was amended by adding a subdivision, (9-a), which read as follows:

> "No license shall be issued by the police commissioner of the city of New York except to a resident of that city. Outside of the city of New York, no license shall be issued by a judge or justice of a court of record except to a resident of the county in which the office of such judge or justice is located. A license may be issued, however, to a qualified person principally employed in such city or county and to a merchant or storekeeper having his principal place of business in such city or county" (L 1931, ch 792, § 4).

At the beginning of September 1931, the month in which this law was passed, Governor Roosevelt wrote to the legislature, sitting in extraordinary session, attaching a letter he had received from the Police Commissioner of New York City. The Police Commissioner recommended that then Penal Law § 1897 be amended to ensure "[t]hat permits to carry a pistol upon the person or to be kept upon the premises be issued only by the police commissioner or chief of police of any city in this State and in the rural communities by the sheriff of the county" (Letter from Edward P. Mulrooney, New York City Police Commissioner, to Governor Franklin D. Roosevelt, Aug. 29, 1931,

reprinted in Public Papers of Governor Franklin D. Roosevelt, 1931 at 184 [1937]). Commissioner Mulrooney spelled out the reasons:

> "Many persons of unsavory reputation, or with criminal records, are apprehended in [New York City] and are found in the possession of pistol permits issued by a judge or justice of a court of record in other counties of the State.

> "In [New York City] permits are issued by the police commissioner only after the applicant is fingerprinted, photographed and investigated, whereas in other counties of the State permits are issued with little or no investigation" (*id.*).

Summarizing the issue, Governor Roosevelt wrote that "[i]t is a fact that the present issuing of revolver permits by judges anywhere in the State is working badly, and permits must be more carefully guarded" (Message to the Legislature, Sept. 1, 1931, reprinted in Public Papers of Governor Franklin D. Roosevelt, 1931 at 183).

This history indicates that the residence language was introduced to prevent New York City residents from obtaining handgun permits in counties where, at the time, investigations of applicants were much less thorough than in the city. It is therefore evident that the law was originally designed to ensure that licenses were obtained where applicants resided, and to discourage "forum-shopping," rather than to exclude certain applicants from qualifying at all.

The corresponding residence language in today's Penal Law § 400.00 (3) (a) is derived from former Penal Law § 1903, which was added in 1963 (L 1963, ch 136, § 8; *see* 1963 McKinney's Session Laws of NY at 155), and then adopted in the revised Penal Law provisions of 1965 (L 1965, ch 1030; *see* 1965 McKinney's Session Laws of NY at 1691). Appellant points to no legislative history from the 1960s suggesting that the relevant intent of the legislature was different then from what it had been in 1931. We conclude that there was no intent by the legislature to exclude applicants on the basis of domicile.

Finally, and most conclusively, Penal Law § 400.00 itself contemplates that licenses may be issued to individuals who do not make their domicile in New York. When a license to carry or possess a pistol or revolver "is issued to an alien, or to a person not a citizen of and usually a resident in the state, the licensing

officer shall state in the license the particular reason for the issuance and the names of the persons certifying to the good character of the applicant" (Penal Law § 400.00 [7]). Since a handgun license may be issued, under the statute, to a person who is "not . . . usually a resident" in New York State, it is clear that there is no requirement of domicile.

## V.

Because we hold that Penal Law § 400.00 (3) (a) does not preclude an individual who owns a part-time residence in New York but makes his permanent domicile in another state from applying for a New York handgun license, we have no occasion to decide whether a contrary law would be unconstitutional.

Accordingly, the certified question should be answered in the affirmative.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.