15-1307
Griffin v. Sirva Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: January 8, 2016          Decided: August 30, 2016)

Docket No. 15-1307

_____

TRATHONY GRIFFIN and MICHAEL GODWIN,

*Plaintiffs-Appellants,*

v.

SIRVA INC. and ALLIED VAN LINES, INC.,[1]

*Defendants-Appellees.*

_____

Before: POOLER, HALL, and CARNEY, *Circuit Judges.*

Appeal from United States District Court for the Eastern District of New York (Brodie, *J.*) granting summary judgment in favor of defendants-appellees

---

[1] The Clerk of Court is respectfully directed to amend the caption as above.

Sirva, Inc. and Allied Van Lines, Inc. and denying plaintiffs-appellants Trathony Griffin and Michael Godwin's motion for partial summary judgment. Griffin and Godwin's direct employer, Astro Moving and Storage Co. ("Astro"), which is not a party to this appeal, terminated Griffin and Godwin after discovering their past criminal convictions through a background check. Because Astro had signed a contract with Allied prohibiting any individuals convicted of certain crimes from working on Allied jobs, Griffin and Godwin allege that Allied and Sirva, Inc., as Allied's parent, can be held liable under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., for employment discrimination on the basis of their criminal convictions. In its ruling on the parties' cross-motions for summary judgment, the district court found that Allied and Sirva were not Griffin and Godwin's "direct employers," and therefore held they could not be liable for "denying employment" on the basis of a criminal conviction. *See* N.Y. Exec. Law § 296(15). Because we are of the view that there is insufficient New York State authority on the issue of who may be held liable under Section 296(15) to allow

us to predict how the New York Court of Appeals would rule, we seek the views

of the New York Court of Appeals.

Questions certified.

_____

STUART LICHTEN, Lichten & Bright, P.C., New York, NY, *for Plaintiffs-Appellants.*

GEORGE W. WRIGHT, George W. Wright & Associates, LLC, New York, NY, *for Defendants-Appellees.*

POOLER, *Circuit Judge*:

This appeal presents the question of who may be held liable under Section

296(15) of the New York State Human Rights Law ("NYSHRL"), which prohibits

the denial of employment on the basis of a criminal conviction. *See* N.Y. Exec.

Law § 296(15). The plaintiffs are two former employees of Astro Moving and

Storage Co. ("Astro"), which, as its name suggests, provides certain moving and

storage services as a "disclosed households goods agent" on behalf of defendant-

appellee Allied Van Lines, Inc. ("Allied"). Defendant-appellee Sirva, Inc.

("Sirva") is a holding company of Sirva Worldwide, Inc. ("Sirva Worldwide")

3

and Sirva Worldwide is the parent company of North American Van Lines, Inc. ("Van Lines"). Van Lines is the parent company of Allied.

In its agency contract with Allied, Astro agreed to require any employees working on Allied jobs to undergo a criminal background check. If an employee was found to have one of several serious criminal convictions on his or her record, Allied effectively prohibited Astro from allowing those employees to work on Allied jobs.

Griffin and Godwin both submitted consent forms for a background check in February 2011. When the background check was completed, the contractor that performed the check found that Griffin and Godwin had both been convicted of certain felony sexual offenses. Sometime thereafter, the President of Astro, Keith Verderber, terminated their employment.[2] Griffin and Godwin, along with another terminated employee not party to this appeal, then brought suit against Astro, Allied, and Sirva, alleging violations of the NYSHRL, N.Y.

---

[2] There is some dispute in the record regarding whether Griffin was actually "terminated" or whether he voluntarily resigned. For the purposes of this opinion, we assume, without deciding, that Griffin was terminated because of his criminal conviction.

Exec. Law § 290 et seq., and against Astro alone for violations of 42 U.S.C. § 1981, the Fair Labor Standards Act ("FLSA"), and the New York Labor Law. Plaintiffs then moved for partial summary judgment against all defendants on the issue of liability under NYSHRL § 296(15) for discrimination on the basis of a criminal conviction. Sirva and Allied then cross-moved for summary judgment.

The district court (Brodie, *J.*) denied Plaintiffs' motion for partial summary judgment and granted Sirva and Allied's motion. The district court determined that Section 296(15) applied only to the aggrieved party's "employer." The district court examined a variety of cases discussing how an entity is determined to be an individual's "employer." Because Griffin and Godwin were not directly employed by either Allied or Sirva, the district court determined that Allied and Sirva could not be held liable under the NYSHRL for Astro's termination of Griffin and Godwin.[3]

---

[3] The case against Astro proceeded to trial, where a jury found Astro liable only for violations of the Fair Labor Standards Act and not liable for a violation of the NYSHRL.

The question of who may be held liable under Section 296(15) is an unresolved question of New York State law. The case presents the following three questions that the New York Court of Appeals has not had the opportunity to address:

*First*, does Section 296(15) limit liability for unlawful denial of employment only to the aggrieved party's "employer"? *Second*, if Section 296(15) is limited in that way, how should courts determine whether an entity is the aggrieved party's "employer" for the purposes of a claim under Section 296(15)? *Third*, does the "aiding and abetting" liability provision of the NYSHRL, Section 296(6), apply to Section 296(15) such that a non-employer may be liable under Section 296(15) as an aider and abettor of an employer's unlawful denial of employment?

Because we conclude that New York law is unsettled with respect to these three questions, we conclude the law is too undeveloped "in this area to enable us to predict with confidence how the New York Court of Appeals would resolve these issues of New York State law presented on appeal." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 55 (2d Cir.), *certified question accepted sub*

6

*nom. Licci v. Lebanese Canadian Bank,* 18 N.Y.3d 952 (2012), and *certified question answered sub nom. Licci v. Lebanese Canadian Bank,* 20 N.Y. 3d 327 (2012).

Therefore, we certify to the New York State Court of Appeals these three questions concerning liability under NYSHRL Section 296(15).

**BACKGROUND**

The facts set forth below are drawn from the district court's opinion denying Griffin and Godwin's motion for partial summary judgment and granting Sirva and Allied's motion for summary judgment. *See Griffin v. Sirva Inc.*, No. 11-CV-1844 MKB, 2014 WL 2434196 (E.D.N.Y. May 29, 2014). With a few exceptions, the relevant material facts are not in dispute. Thus we provide only those facts we think necessary for a complete understanding of this appeal and the questions of law posed.

**I.    The Agency Contract**

Griffin and Godwin are both former laborer employees of Astro, which "provides local warehouse services and transportation services under its own authority from the New York State Department of Transportation." App'x at 274.

Under its agency contract with Allied, Astro was entitled to, among other things, "pack, crate, prepare for transportation, receive, load, transfer, unload, store, warehouse, deliver, and otherwise to service . . . shipments of household goods and all other freight which [Allied] ha[d] authority to transport[.]" App'x at 62.

The agency contract also required Astro to comply with Allied's "Certified Labor Program" (the "ACLP"). The ACLP required Astro to ensure that all of its employees working on any Allied jobs successfully complete a criminal background check. Under the ACLP, Allied was granted the "sole authority and responsibility to establish and determine the consent process, adjudication standards, and documentation criteria for both certification of individuals and alternative vendors" running the background checks on employees. App'x at 63. Allied was also entitled to conduct "periodic audits" of Astro's employees to "verify the use of certified individuals and compliance with the ACLP." App'x at 64. If Astro was found in non-compliance, Allied was permitted to levy a series of fines based on whether the violation was a first, second, or third offense.

Allied maintains certain "adjudication guidelines" that are "used to determine the eligibility of its agents' contractors and employees for participation in Allied's interstate moving services." App'x at 112. Under the guidelines, an employee's "felony conviction for any (A) sexual offense; (B) kidnapping; (C) death related offenses; (D) attempted murder; (E) assault with a deadly weapon; (F) assault with intent to kill or (G) armed robbery, mandates the [employee's] permanent disqualification from any jobs performed by" one of Allied's agents. App'x at 112.

To facilitate the background screening process, Sirva Worldwide entered into an agreement with HireRight Solutions, Inc. ("HireRight"), a vendor providing background screening services, effective August 24, 2010. After an employee fills out a consent form, HireRight conducts a background check and then provides one of Allied's agents with information as to whether a particular employee is "cleared or not" from working on any of Allied's jobs. App'x at 48.

## II. The Relationship between Allied and Astro

Seventy- to eighty-percent of Astro's business is projects for Allied. But Allied asserts it is a separate legal entity from Astro, and maintains that it does not share employees, common ownership, or management with Astro. Further, Allied states it "does not control ASTRO's local moving business, . . . nor does ALLIED control ASTRO's employment policies or practices relating to its own business." App'x at 96. Allied further asserts that "Allied has no authority to select or hire Astro's employees and has never possessed such authority" and that Allied "does not establish the salaries or benefits of Astro's employees, make any payments to Astro's employees, have the authority to discipline or dismiss Astro's employees, control the conduct of Astro's employees, or control the work schedules of, assign jobs to, or supervise the work of Astro's employees." *Griffin*, 2014 WL 2434196, at *2.

## III. Griffin and Godwin's Convictions, Employment with Astro, and Terminations

Griffin began working for Astro in August 2008 and Godwin began working for the company in May 2010. Both worked as "helpers," which

10

required them to, among other things, pack household goods for transportation and move goods "in and out of ASTRO's customer's homes." App'x at 93.

In 1997, Griffin pleaded guilty to first degree child abuse and sexual misconduct. He was sentenced to six to twelve years' imprisonment and served ten years. He is designated a "Sexually Violent Offender," and is currently under the supervision of the New York State Division of Parole with conditions that he is not permitted to have contact with children under the age of eighteen unless he is in the company of another adult.

In 1999, Godwin pleaded guilty to rape in the first degree and sexual abuse in the first degree. He was sentenced to nine years' imprisonment and was released in 2008. He remained on parole until May 2010. Like Griffin, Godwin is also designated a "Sexually Violent Offender" and subject to the same condition that he have no contact with children under the age of eighteen unless in the company of another adult.

Although Griffin began working for Astro in August 2008, he was not asked to consent to a background check until 2011, and both Godwin's and

11

Griffin's consent forms were submitted to HireRight in February 2011. In response to a question asking whether Griffin had "been convicted of any felony criminal offenses," Griffin admitted that he was convicted of "child abuse." App'x at 79. When HireRight's reports on Griffin and Godwin were returned, both reports stated that neither was eligible to work on any Allied jobs.

**DISCUSSION**

**I.    Standard of Review**

It is settled that this court "review[s] a grant of summary judgment *de novo*, . . . constru[ing] the evidence in the light most favorable to the nonmoving party and draw[ing] all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).

Sirva and Allied dispute the standard of review, claiming that because the jury's verdict found that Astro did not unlawfully violate the New York State Human Rights Law ("NYSHRL"), that Griffin and Godwin are bound by this verdict on appeal. But "[u]pon review of a grant by a district court of a motion for summary judgment, a federal appellate court may examine *only the evidence*

12

*which was before the district court.*" *Katir v. Columbia Univ.*, 15 F.3d 23, 25 (2d Cir. 1994) (internal quotation marks omitted) (emphasis added). Indeed, the "district court's grant of summary judgment must be examined independently of the evidence presented at trial." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 242 (4th Cir. 2002). This court's "review is limited to the record presented to the district court at the time of summary judgment. . . . [This court] likewise do[es] not rely on evidence introduced at trial or on the jury's verdict." *Lippi v. City Bank*, 955 F.2d 599, 604 (9th Cir. 1992). "Neither the evidence offered subsequently at the trial nor the verdict is relevant." *Voutour v. Vitale*, 761 F.2d 812, 817 (1st Cir. 1985).

## II.     The New York State Human Rights Law

### A. Background

"As a general matter, it is unlawful in [New York] for any public or private employer to deny any license or employment application 'by reason of the individual's having been previously convicted of one or more criminal offenses.'" *Acosta v. N.Y.C. Dep't of Educ.*, 16 N.Y.3d 309, 314 (2011) (quoting N.Y.

13

Correct. Law § 752). "This general bar was enacted to further certain goals that the Legislature has identified as among the 'general purposes' of the Penal Law, namely, 'the rehabilitation of those convicted' and 'the promotion of their successful and productive reentry and reintegration into society.'" *Id.* at 314 (quoting NYSHRL § 296). The statute provides in relevant part that

> [i]t shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law. Further, there shall be a rebuttable presumption in favor of excluding from evidence the prior incarceration or conviction of any person, in a case alleging that the employer has been negligent in hiring or retaining an applicant or employee, or supervising a hiring manager, if after learning about an applicant or employee's past criminal conviction history, such employer has evaluated the factors set forth in section seven hundred fifty-two of the correction law, and made a reasonable, good faith determination that such factors militate in favor of hire or retention of that applicant or employee.

N.Y. Exec. Law § 296(15). There are, however, two significant exceptions to this general prohibition. The first exception arises where "there is a direct relationship between one or more of the previous criminal offenses and the

14

specific license or employment sought or held by the individual." N.Y. Correct. Law § 752(1). The Legislature has clarified that a "'[d]irect relationship' means that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license, opportunity, or job in question." *Id.* § 750(3).

The second exception allows for adverse treatment where "the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." *Id.* § 752(2). The New York Court of Appeals has "noted that the Legislature has not provided a statutory definition of the phrase 'unreasonable risk' in this context 'for the obvious reason that a finding of unreasonable risk depends upon a subjective analysis of a variety of considerations relating to the nature of the license or employment sought and the prior misconduct.'" *Acosta,* 16 N.Y.3d at 315 (quoting *In re Bonacorsa v. Van Lindt,* 71 N.Y.2d 605, 612 (1988)).

15

Although the "unreasonable risk" analysis under the second exception is a subjective one, Section 753(1) of the Correction Law provides that, "[i]n making a determination" as to whether either the "direct relationship" exception or the "unreasonable risk" exception applies, "the public agency or private employer shall consider" the following eight factors:

(a) The public policy of [New York], as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d) The time which has elapsed since the occurrence of the criminal offense or offenses.

(e) The age of the person at the time of occurrence of the criminal offense or offenses.

(f) The seriousness of the offense or offenses.

(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

16

(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law. § 753(1). "A failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive." *Acosta,* 16 N.Y.3d at 316 (citing *In re Arrocha v. Bd. of Educ. of City of N.Y.,* 93 N.Y.2d 361, 364 (1999)).

**B. Analysis**

While there is a considerable body of law interpreting the NYSHRL by both state and federal courts, few cases have addressed the provisions at issue in this case. The district court held that Allied and Sirva cannot be liable under the NYSHRL in this case because they were not Griffin and Godwin's "employers." However, we find there are three problems with this determination because of open and unresolved questions of New York State law.

First, it is unclear whether Section 296(15) is strictly limited to "employers." The district court inferred that to "'deny employment,' the denying entity must be an employer as understood by the caselaw interpreting the

17

NYSHRL." *Griffin*, 2014 WL 2434196, at *11. While the New York Court of Appeals may interpret the statute in this manner, we cannot say that this interpretation is obviously dictated by the statute's language or existing case law.

Second, even if Section 296(15) is limited to "employers," that does not resolve the question of the scope of the term "employer." "The Human Rights Law definition of employer [refers] only to the number of persons employed[.]" *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 543 (1984) (citation omitted); s*ee also* N.Y. Exec. Law § 292(5). While New York courts have provided balancing tests to determine whether an entity is an "employer," they have not applied those tests to Section 296(15). There is also reason to believe that the definition of "employer" could be broader in the context of Section 296(15). For example, in most cases it is unlikely that a New York company would be bound by a contractual term to apply a policy that explicitly discriminates on the basis of race or sex. But in this case, the agency contract explicitly required Astro to discriminate on the basis of prior criminal convictions. Thus, Section 296(15) may be distinguishable from other provisions of the NYSHRL having to do with

18

discrimination on the basis of race or sex, and may well require a broader definition of "employer" to effectuate its prohibition against discrimination.

Third, the NYSHRL also provides for "aiding and abetting" liability. *See* N.Y. Exec. Law § 296(6). We have found no New York State case law applying this provision to Section 296(15). It is possible that an agency contract, such as the one at issue in this case, could fall within the ambit of aiding and abetting liability under Section 296(6).

> ### i. *Whether the Statutory Provision is Expressly Limited to "Employers"*

Griffin and Godwin argue that because § 296(15) on its face is not limited to employers, "it is not necessary for Griffin and Godwin to prove that SIRVA and ALLIED were their employers." Appellants' Br. at 14. For their part, Allied and Sirva claim that Section 296(15) "only applies to employers." Appellees' Br. at 18. While the word "employer" appears nowhere in the first half of the provision, which addresses discrimination on the basis of a conviction, the word is used twice in the second half of the provision addressing negligent hiring practices.

Although Sirva and Allied insist that the "repeated use of the term 'employer'" in Section 296(15) "leaves no doubt that its discrimination provisions apply only to employers," Appellees' Br. at 19, we find this argument unpersuasive absent definitive case law from New York State courts. The second half of this provision addresses an entirely different subject matter than the first portion. In fact, that the term is used twice in the second half of the provision makes its absence in the first half addressing discrimination even more glaring.

Sirva and Allied also suggest that a limitation to "employers" can be inferred because "only an employer can 'deny employment,'" a position the district court adopted. *See Griffin*, 2014 WL 2434196, at *11. Further, Sirva and Allied point to Section 753 of the New York State Correction Law, incorporated by reference in Section 296(15), which states that "[i]n making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or *private employer* shall consider" the eight relevant factors. N.Y. Correct. Law § 753(2) (emphasis added).

20

Griffin and Godwin respond that the "drafters of the Executive Law provision here, . . . took great pains precisely to avoid limitation of the law's applicability to employers." Appellants' Br. at 9. They contend that other sections of the NYSHRL demonstrate this legislative intent. For example, the provision barring employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, and domestic violence victim status, is expressly limited to an "employer or licensing agency." N.Y. Exec. Law § 296(1)(a). Similarly, the prohibition on discrimination in training programs applies only to an "employer, labor organization, employment agency or any joint labor-management committee controlling apprentice training programs." *Id.* § 296(1-a).

Neither party cites convincing New York State legal authority to support their claims. Absent clear authority in the precedents of the New York State Court of Appeals, we conclude it is appropriate to certify these questions to that Court, respectfully further guidance on these questions of New York law.

*ii. The Scope of the term "Employer"*

Even if we were to decide that § 296(15) is strictly limited to the aggrieved party's "employer," we would still have to decide the scope of the term "employer." State courts have held that "[g]enerally, four elements are considered in determining whether the relationship of employer and employee exists: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct*." State Div. of Human Rights v. GTE Corp.*, 487 N.Y.S.2d 234, 235 (4th Dep't 1985) (internal quotation marks omitted). Courts have often stressed that the "really essential element of the relationship is the right of control, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter." *Id.* (internal quotation marks omitted).

The district court seems to have relied on this factor-based analysis in its determination that Allied and Sirva were not Griffin and Godwin's "employer." The district court concluded that Allied and Sirva "had no employment relationship" with Griffin and Godwin and did not have "any ownership interest

22

in Astro." *Griffin*, 2014 WL 2434196, at *12. The district court also found that Sirva and Allied did not have any other "liability-engendering authority over Plaintiffs" such as (1) the power to hire and fire employees, (2) supervision and control of employee work schedules or conditions of employment, (3) determination of the rate and method of payment, and (4) maintenance of employment records. *Id.* Furthermore, the district court observed that according to Thomas Lambert, the Director of Agency Services at Allied, "Allied did not instruct Astro to terminate Griffin's or Godwin's employment[,] and no one had any advance notice of the termination of their employment." *Id.* at *13. Finally, the district court noted that Astro could have simply moved Griffin and Godwin off of Allied jobs. *Id.*

But these factors have been taken into account by courts when addressing whether an *individual* is liable under other provisions of the NYSHRL. In *Patrowich v. Chemical Bank*, the New York Court of Appeals held that an individual is not subject to suit under § 296 of the NYSHRL as an employer unless he "ha[s] an ownership interest" in the employer or if the individual has

"the power to do more than carry out personnel decisions made by others." 63 N.Y.2d at 542. Many cases relied on by the district court in its analysis applied this standard. *See e.g.*, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (an individual may not be liable "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012).

But it is not clear that the factors relevant to individual liability under the NYSHRL should control or whether other factors might merit consideration where, as here, the question is whether liability may be imposed on another corporation that has simply a contractual relationship with the employing company. The Court of Appeals does not appear to have addressed the scope of the term "employer" in these circumstances. *See Kaiser v. Raoul's Rest. Corp.*, 899 N.Y.S.2d 210, 211 (1st Dep't 2010) ("In the more than 25 years since *Patrowich*, the Court of Appeals has not again had occasion to construe the definition of 'employer' under the Human Rights Law.").

24

When determining whether an individual falls under the "control" prong, courts have frequently applied the so-called "economic realities" test, balancing "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Individuals may be held liable if they "actually participate[] in the conduct giving rise to a discrimination claim[.]" *Tomka*, 66 F.3d at 1317.

The district court assumed that "[w]hen a plaintiff seeks to sue an additional defendant, other than a direct employer, and that additional defendant is a business, courts have also applied the four economic realities factors to determine whether the two companies are 'joint employers.'" *Griffin*, 2014 WL 2434196, at *13. To support this proposition, the district court relied on *Voltaire v. Home Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 96 (E.D.N.Y. 2011). But *Voltaire* assumed the application of the economic realities factors because "both parties' submissions state[d] that these factors [were] applicable to both NYSHRL

25

and NYCHRL cases." *Id.* at 97. Further, the district court here makes no distinction between the "joint employer" doctrine and the "single employer" doctrine, both of which have been utilized by courts in this circuit in discrimination cases brought against a business that is not the plaintiff's "direct employer."

The joint employer doctrine, along with the "single employer" (or "single integrated employer") doctrines "have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010); *see also Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 197 (2d Cir. 2005). "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise . . . .'" *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985) (quoting *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). In contrast, a "joint employer" relationship involves

26

separate legal entities that "handle certain aspects of their employer-employee relationship jointly." *Id.*

"The single employer doctrine provides that, 'in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (quoting *Arculeo*, 425 F.3d at 198).

To determine whether two separate entities should be considered a single employer for the purposes of employment discrimination claims, courts have relied on four considerations: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). "Although no one factor is determinative . . . control of labor relations is the central concern." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).

27

"The joint employer doctrine applies where there is no single integrated enterprise, but where two employers 'handle certain aspects of their employer-employee relationship jointly.'" *Fowler*, 677 F. Supp. 2d at 681 (quoting *Arculeo*, 425 F.3d at 198). For example, "[a]n employee formally employed by one entity can be found to be constructively employed by another entity, and thus may impose liability for violations of employment law on the constructive employer." *Id.; see also NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) ("A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees."). The doctrine is drawn in part from express language in the Family and Medical Leave Act ("FMLA"), which provides that separate and distinct entities with separate owners may be "joint employers under the FMLA if they 'jointly exercise some control over the work or working conditions of the employee.'" *Voltaire*, 823 F. Supp. 2d at 96 (quoting 29 C.F.R. § 825.106(a)).

The district court made no apparent attempt to distinguish analytically the "joint employer" doctrine from the "single employer" doctrine. Both have been

applied by courts in this circuit when considering discrimination claims against businesses that are not the plaintiff's "direct employer." But whether one or the other (or both) applies to the NYSHRL, especially Section 296(15), remains unresolved.

### iii. The Applicability of the "Aiding and Abetting" Provision

Finally, we do not believe New York case law is settled on whether the "aiding and abetting" provision of the NYSHRL, § 296(6), is applicable to the facts of this case. The district court determined that the "joint employer" doctrine also applies when a plaintiff is seeking "aiding and abetting" liability of "an additional defendant, other than a direct employer, and that additional defendant is a business." *Griffin*, 2014 WL 2434196, at *12. We cannot say this is obviously the case. The provision that gives rise to aiding and abetting liability provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden . . . or to attempt to do so." N.Y. Exec. Law § 296(6). At least where the alleged aider and abettor is an individual employee of the corporate employer, we have held that

29

this provision requires that the alleged aider and abettor "'actually participated in the conduct giving rise to the claim of discrimination,' and that the 'aider and abettor share the intent or purpose of the principal actor.'" *Idlisan v. N.Y.S. Dep't of Taxation & Fin.*, No. 12-CV-1787 MAD/CFH, 2013 WL 2898050, at *4-5 (N.D.N.Y. June 13, 2013) (quoting *Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-CV-4856, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009)); *see also Tomka*, 66 F.3d at 1317 ("A defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL."). Again, we see reason to think that New York might construe this provision differently when the liability of a corporation that contracts with the employing corporate defendant is at issue: different considerations may be relevant. Further, even if the standards are similar or the same for the individual co-employee and the contracting corporate defendant, we think it would be an odd result to hold that a defendant business that "actually participate[d] in the conduct giving rise to a discrimination claim," may be liable only if it is the defendant's "direct employer" or if it also satisfies the "joint employer" doctrine. The district court

30

fails to explain why such a result is dictated by the text of the NYSHRL or existing New York State case law. As with respect to the prior two questions, the law is unsettled on the applicability of Section 296(6) to Section 296(15).

**CONCLUSION**

Before we certify a question to the Court of Appeals, "we must answer three others: (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013) (internal quotation marks omitted), *certified question accepted*, 20 N.Y.3d 1058 (2013), *and certified question answered*, 21 N.Y.3d 580 (2013). In this case, the answer to each suggests that certification is appropriate. First, as discussed above, New York courts have not determined who may be liable under § 296(15), or addressed the scope § 296(6) when the alleged aider and abettor is not an individual. Second, the prohibition

31

against discrimination on the basis of prior criminal convictions reflects the New York Legislature's important policy goal of promoting "successful and productive reintegration into society." *See Acosta*, 16 N.Y.3d at 314 (internal quotation marks omitted). The question of who may be held liable for violating that prohibition will have a substantial effect on how that goal is realized. Finally, the outcome of this appeal will depend on the answers to the certified questions. If § 296(15) applies only to "direct "employers, and § 296(6) does not permit aiding and abetting liability in these circumstances, Griffin and Godwin's claims against Allied and Sirva fail as a matter of law. On the other hand, if Griffin and Godwin can assert their claims against Allied and Sirva, the district court's order must be vacated and their cases allowed to proceed.

Accordingly, and pursuant to New York Court of Appeals Rule 500.27 and Local Rule 27.2 of this Court, we certify the following three questions to the New York Court of Appeals:

(1) Does Section 296(15) of the New York State Human Rights Law, prohibiting discrimination in employment on the basis of a criminal conviction, limit liability to an aggrieved party's "employer"?

(2) If Section 295(15) is limited to an aggrieved party's "employer," what is the scope of the term "employer" for these purposes, *i.e.* does it include an employer who is not the aggrieved party's "direct employer," but who, through an agency relationship or other means, exercises a significant level of control over the discrimination policies and practices of the aggrieved party's "direct employer"?

(3) Does Section 296(6) of the New York State Human Rights Law, providing for aiding and abetting liability, apply to § 296(15) such that an out-of-state principal corporation that requires its New York State agent to discriminate in employment on the basis of a criminal conviction may be held liable for the employer's violation of § 296(15)?

In certifying these questions, we do not bind the Court of Appeals to the particular questions stated. Rather, the Court of Appeals may expand these certified inquiries to address any further question of New York law as might be relevant to the particular circumstances presented in this appeal. This panel will resume its consideration of this appeal after the disposition of this certification by the New York Court of Appeals.

It is hereby **ORDERED** that the Clerk of Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of the briefs, the appendix, and the record filed in this Court by the

33

parties. The parties shall bear equally any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification.