OPINION OF THE COURT
Chief Judge DiFiore.
The United States Court of Appeals for the Second Circuit has posed three questions regarding who may be liable under the New York State Human Rights Law. Two questions concern Executive Law (Human Rights Law) § 296 (15), which prohibits discrimination against individuals with prior criminal convictions. A third question concerns section 296 (6), which prohibits aiding and abetting discriminatory conduct.
Plaintiffs are two former employees of Astro Moving and Storage Co., Inc., a New York company. Astro hired plaintiffs as laborers in August 2008 and May 2010, respectively. Both have prior criminal convictions for sexual offenses against young children.
*180 In June 2010, Astro entered into a contract with Allied Van Lines, Inc., pursuant to which Astro performed moving services for Allied. Allied, a nationwide moving company based in Illinois, is a subsidiary of Sirva, Inc. Thereafter, approximately 70% to 80% of Astro’s work was performed for Allied. The contract precluded Astro from working for other motor carriers, with limited exceptions.
The contract required Astro to adhere to Allied’s Certified Labor Program guidelines, which required that employees who “conduct the business of Allied at customer’s home or place of business . . . must have successfully passed a criminal background screen ... as specifically approved by Allied.” If Astro violated the guidelines by using unscreened labor, it was subject to escalating monetary penalties. Under these guidelines, employees automatically failed the criminal background screen if they had ever been convicted of a sexual offense.
In 2011, plaintiffs consented to have Sirva and/or its agents investigate their criminal records, which identified their convictions for sexual offenses against young children. Soon thereafter, Astro fired plaintiffs.[1]
Plaintiffs and a third Astro employee who is not a party to the Second Circuit appeal sued Astro, Sirva, and Allied in the United States District Court for the Eastern District of New York. The complaint alleges violations of the New York State Human Rights Law § 296 (15) and (6), the New York Labor Law, the Fair Labor Standards Act, and 42 USC § 1981. Only the claims under the Human Rights Law are relevant here.
Plaintiffs moved for partial summary judgment against all defendants on liability for their section 296 (15) claim, which alleged discrimination on the basis of their prior criminal convictions. Defendants Allied and Sirva cross-moved for summary judgment. The district court denied plaintiffs’ motion and granted Allied and Sirva’s motion. The district court held that section 296 (15) applies only to employers; that neither Sirva nor Allied was plaintiffs’ employer; and that neither Sirva nor Allied was liable under section 296 (6), which imposes aiding and abetting liability, because neither participated in firing plaintiffs.
*181 Plaintiffs appealed to the Second Circuit.[2] Recognizing that the appeal presented unresolved questions under New York law, the Second Circuit certified three questions to this Court regarding who is liable under the New York State Human Rights Law (Griffin v Sirva Inc., 835 F3d 283 [2d Cir 2016]).
Certified Question No. 1
The first certified question asks: “Does Section 296(15) of the New York State Human Rights Law, prohibiting discrimination in employment on the basis of a criminal conviction, limit liability to an aggrieved party’s ‘employer’?” (835 F3d at 294.) We answer this question in the affirmative.
Human Rights Law § 296 (15) provides that
“ [i] t shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the correction law. Further, there shall be a rebuttable presumption in favor of excluding from evidence the prior incarceration or conviction of any person, in a case alleging [negligent hiring claims], if after learning about an applicant or employee’s past criminal conviction history, such employer has evaluated the factors set forth in [Correction Law § 752], and made a reasonable, good faith determination that such factors militate in favor of hire or retention of that applicant or employee.”
Plaintiffs argue that, by its plain language, the law extends liability beyond employers to “any person,” in contrast to other Human Rights Law prohibitions, which expressly limit liability to employers or related entities such as licensing or employment agencies. For instance, section 296 (1) (a) refers expressly *182 to “an employer or licensing agencysimilarly, section 296 (1) (b) makes it unlawful “[flor an employment agency to discriminate” in employment on the basis of age, race, creed, color, or other specified grounds (Executive Law § 296 [1] [a], [b] [emphasis added]). In addition, plaintiffs contend that the absence of the word “employer” from the first sentence in subdivision (15) is made all the more glaring by the use of the word twice in the second sentence addressing liability for negligent hiring practices. Allied and Sirva respond that the plain meaning of section 296 (15) as a whole, which incorporates article 23-A of the Correction Law by reference, limits liability to employers.
We agree that liability under section 296 (15) arises only upon a violation of article 23-A. Section 296 (15) prohibits “denying] any license or employment . . . when such denial is in violation of the provisions of article [23-A].” Article 23-A, in turn, instructs that “[n]o application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual’s having been previously convicted of one or more criminal offenses” (Correction Law § 752).
In contrast to the Human Rights Law, article 23-A specifies further that the prohibition applies “to any application by any person for a license or employment at any public or private employer . . . and to any license or employment held” (Correction Law § 751 [emphasis added]). This language targets the employer, public or private, where the individual is employed or has applied for employment. In particular, with respect to prospective employment, liability arises only when it concerns an application “at” an employer; with respect to existing employment, liability arises only when an employer discriminates against an existing employee. In other words, the application or employment must relate to a specific or otherwise identified employer.
Two exceptions to article 23-A’s prohibitions, set out in Correction Law § 752, further clarify the scope of the statute. The first exception applies when “there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual” (Correction Law § 752 [1]). The second exception applies when “the granting or continuation of the employment would *183 involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public” (Correction Law § 752 [2]). To determine whether either exception applies, “the public agency or private employer” shall consider eight enumerated factors (Correction Law § 753 [1] [emphasis added]). These provisions make clear that article 23-A is addressed to employment determinations made by public and private employers, and further demonstrate that only employers can violate article 23-A, and hence, section 296 (15).
Reading Correction Law §§ 751, 752, and 753 together, article 23-A limits liability for employment discrimination to an employer — either public or private. Section 751 targets discrimination against an applicant “at” a particular employer or against an existing employee. Section 752 sets out what conduct it prohibits, and provides two exceptions. Under either exception, “the public agency or private employer” must consider the eight listed factors (Correction Law § 753). In other words, a cause of action arises only if a person is denied employment by a particular employer because of a prior criminal conviction and the employer did not follow the procedure to determine whether an exception applies. Because it incorporates article 23-A by reference, section 296 (15) of the Human Rights Law likewise limits liability to a public or private employer. No room exists under either the Correction Law or section 296 (15) to hold a nonemployer liable for employment discrimination.
Rather than follow section 296 (15)’s instruction to look to article 23-A of the Correction Law, the dissent ignores the significance of sections 751 through 753 thereof and instead reads section 296 (15) in isolation. The dissent contrasts the use of the word “employer” in the second sentence of section 296 (15) with its absence in the first sentence of the section and concludes that the scope of liability set out in the first sentence must therefore extend beyond employers (dissenting op at 190-191). In our view, this apparent discrepancy is not a discrepancy at all. The first sentence is stated more broadly because the prohibition on discrimination (as elucidated further in article 23-A) applies to both private employers and public agencies. The second sentence, in contrast, solely concerns negligent hiring claims. These claims may be brought against private employers only, not public agencies. Thus the use of the word *184 “employer” in the second sentence not only makes sense, but is required.[3]
The legislative history of section 296 (15) leads to the same conclusion that the broad language of the statute was intended to apply to private employers and public agencies. The bill jacket’s approval memorandum states that the legislation “provides reasonable standards to be applied by public agencies and private employers when considering applications by former offenders” (Governor’s Approval Mem, Bill Jacket, L 1976, ch 931, 1976 NY Legis Ann at 417). The chairman of the Senate Committee on Crime and Correction, which sponsored the bill, submitted a memorandum stating that this amendment is “applicable ... to any employer whether private or public” (Mem in Support, Bill Jacket, L 1976, ch 931). Contrary to what the dissent implies, the legislative history does not indicate any person or entity other than an employer who may be liable under section 296 (15).
Accordingly, we answer the first certified question in the affirmative.
Certified Question No. 2
Because we answered the first certified question in the affirmative, we turn to the second question, which asks:
“If Section [296] (15) is limited to an aggrieved party’s ‘employer,’ what is the scope of the term ‘employer’ for these purposes, i.e. does it include an employer who is not the aggrieved party’s ‘direct employer,’ but who, through an agency relationship or other means, exercises a significant level of control over the discrimination policies and practices of the aggrieved party’s ‘direct employer’?” (835 F3d at 294.)
The question presumes that “a significant level of control” over “discrimination policies,” standing alone, might confer employer status on an entity that is not the aggrieved party’s direct employer. However, other factors are relevant to that determination. We therefore reformulate this question to reflect what the Second Circuit described in its ruling as an open question of New York law for this Court: “if Section 296(15) is *185 limited [to an employer], how should courts determine whether an entity is the aggrieved party’s ‘employer’ for the purposes of a claim under Section 296(15)?” (835 F3d at 285).
Plaintiffs contend that the term “employer” should be construed at least as broadly as it is in the context of title VII of the Civil Rights Act of 1964, the federal analogue to the Human Rights Law. They cite the Second Circuit’s decision in Spirt v Teachers Ins. & Annuity Assn., which held that the term employer is “sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an ‘employer’... as that term has generally been defined at common law” (691 F2d 1054, 1063 [2d Cir 1982] [internal quotation marks and citations omitted]). They contend that Spirt and its progeny apply this “effective control” test to determine who is an employer. Allied and Sirva counter that the Second Circuit later abandoned Spirt, holding instead that in title VII cases the common-law definition of “employer” should apply.
The Human Rights Law and article 23-A of the Correction Law contain definitions of “employer” and “private employer,” respectively, which relate solely to the number of persons employed (Executive Law § 292 [5]; Correction Law § 750 [2]). Neither definition provides guidance on who may be deemed an employer. Our prior decisions have acknowledged the absence of a substantive definition of “employer” in the Human Rights Law. In Matter of Board of Higher Educ. of City of N.Y. v Carter (14 NY2d 138 [1964]), this Court adopted the dictionary definition of “employer,” stating that it had found no other definition as “clear and comprehensive” (id. at 147, quoting Rep of NY St Temp Commn Against Discrimination, 1945 NY Legis Doc No. 6 at 28; see also Patrowich v Chemical Bank, 63 NY2d 541, 543 [1984] [“The Human Rights Law definition of employer . . . provides no clue to whether individual employees of a corporate employer may be sued under its provisions”]).
Federal courts likewise have wrestled with a similar ambiguity in the term “employer” in the context of title VII and other federal statutes. In 1992, the United States Supreme Court held that absent a statutory definition of “employer,” courts should apply the common law to determine who is an employer (Nationwide Mut. Ins. Co. v Darden, 503 US 318, 322-323 [1992]). This doctrine, as articulated in an earlier Supreme Court decision, identifies 13 factors, the most rele *186 vant being the alleged employer’s control over the individual (id. at 323-324, citing Community for Creative Non-Violence v Reid, 490 US 730, 751-752 [1989]).
Following Darden, the Second Circuit held that because title VII contains a “ ‘nominal’ or . . . otherwise unhelpful” definition of “employer,” the common-law test should govern (Gulino v New York State Educ. Dept., 460 F3d 361, 371-372 [2006]). As in Darden, “the common-law element of control is the principal guidepost that should be followed” (id. at 371 [internal quotation marks and citations omitted]).
In a different context, we have held that “[t]he standards for establishing unlawful discrimination under section 296 of the Human Rights Law are the same as those governing title VII cases under the Federal Civil Rights Act of 1964” (Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 330 [2003]; see also Margerum v City of Buffalo, 24 NY3d 721, 731 [2015] [“We have consistently held that the standards for recovery under the New York Human Rights Law are in nearly all instances identical to title VII and other federal law”]). In this instance, the lack of clarity in the Human Rights Law itself certainly permits us to look to title VII cases for guidance.
That said, we need look no further than our own lower courts to determine who is an employer under the Human Rights Law. Decades before Gulino, our lower courts applied New York common law to make that determination. In State Div. of Human Rights v GTE Corp., the Appellate Division identified four relevant factors: “ ‘(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant’s conduct’” (109 AD2d 1082, 1083 [4th Dept 1985], quoting 36 NY Jur, Master and Servant § 2). As with the Reid test (endorsed in Darden and Gulino), “ ‘[t]he really essential element of the relationship is the right of control, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter’ ” {id.).
In light of the foregoing, we answer the second certified question, as reformulated, as follows: common-law principles, as discussed in GTE, determine who may be liable as an employer under section 296 (15) of the Human Rights Law, with greatest emphasis placed on the alleged employer’s power “to order and control” the employee in his or her performance of work.
*187 Certified Question No. 3
The third certified question asks:
“Does Section 296(6) of the New York State Human Rights Law, providing for aiding and abetting liability, apply to § 296(15) such that an out-of-state principal corporation that requires its New York State agent to discriminate in employment on the basis of a criminal conviction may be held liable for the employer’s violation of § 296(15)?” (835 F3d at 294.)
In our view, this question does not concern whether there was discrimination in this particular case, but rather seeks clarification as to who may be liable under section 296 (6)— similar to the two prior questions regarding section 296 (15). Therefore, we reformulate the question to ask “whether section 296 (6) extends liability to an out-of-state nonemployer who aids or abets employment discrimination against individuals with a prior criminal conviction.” To this reformulated question, we answer in the affirmative.
Section 296 (6) states: “It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.” The district court held that for section 296 (6) to apply to a third-party entity who is not the plaintiff’s direct employer, the third party and the employer must be “joint employers” (Griffin v Sirva, Inc., 2014 WL 2434196, *12, 2014 US Dist LEXIS 73306, *38 [ED NY, May 29, 2014, No. 11-CV-1844 (MKB), Brodie, J.]). The Second Circuit questioned whether this was correct (Griffin, 835 F3d at 293).
Section 296 (6) extends liability to persons and entities beyond joint employers, and this provision should be construed broadly. Section 296 (6) applies to any “person.” Unlike section 296 (15), nothing in the statutory language or legislative history limits the reach of this provision to employers. Indeed, the purpose of subdivision (6) was “to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so,” as well as “to furnish protection to all persons, whether employers, labor organizations or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices” (Rep of NY St Temp Commn Against Discrimination, 1945 NY Legis Doc No. 6 at 31).
*188 In accord with that purpose, we have previously applied section 296 (6) to a newspaper company that had no employment relationship with the plaintiff (National Org. for Women v State Div. of Human Rights, 34 NY2d 416 [1974] [NOW]). In NOW, the defendant newspaper company divided employment listings into categories with the captions “Help Wanted — Male” and “Help Wanted — Female” (id. at 419). We held that these listings discriminated on the basis of sex. Although the defendant did not “directly perpetuat[e]” the discrimination since it was not the women’s employer or prospective employer, it “aided and abetted” such discrimination as condemned by section 296 (6) (id. at 421). Notably, the Court in NOW did not consider the issue of whether, separate from the newspaper company, any employer or prospective employer was liable for primary discrimination under the Human Rights Law.
Section 296 (6) also applies to out-of-state defendants. The Human Rights Law contains an extraterritoriality provision, which provides: “The provisions of this article shall apply as hereinafter provided to an act committed outside this state against a resident of this state ... if such act would constitute an unlawful discriminatory practice if committed within this state” (Executive Law § 298-a [1]). We have held that “[t]he obvious intent of the State Human Rights Law is to protect ‘inhabitants’ and persons ‘within’ the state, meaning that those who work in New York fall within the class of persons who may bring discrimination claims in New York” (Hoffman v Parade Publs., 15 NY3d 285, 291 [2010]). In particular, the extraterritoriality provision “protects New York residents . . . from discriminatory acts committed outside the state” (id. at 292). To prevail, the injured party “must plead and prove that the alleged discriminatory conduct had an impact in New York” (id. at 291).
Accordingly, the first certified question should be answered in the affirmative and the remaining questions, as reformulated, answered in accordance with this opinion.

. The Second Circuit acknowledges there is some dispute regarding whether one plaintiff was actually “terminated” or whether he voluntarily resigned. Like the Second Circuit, we assume, without deciding, that Astro fired both plaintiffs.

. While plaintiffs’ appeal was pending, their claims against Astro proceeded to a jury trial. The jury found that Astro was not liable on plaintiffs’ claims under the Human Rights Law. Although Allied and Sirva argued to the Second Circuit that the jury verdict in favor of Astro should defeat plaintiffs’ claims against them, the Second Circuit declined, as a matter of federal procedure, to consider the impact of the verdict on the appeal because the verdict was not before the district court on the summary judgment motion.

. Negligent hiring claims are generally barred against public agencies under the doctrine of governmental function immunity (see e.g. Mon v City of New York, 78 NY2d 309, 313-316 [1991]).